under advise Mr. Fite. Thank you very much as well. At our next case is Earline McBride v. Carnival Corporation, case number 22-13940. Mr. Bailey. Mr. Bailey, on behalf of Plaintiff Appellant Earline McBride, may it please the court, and I do have a tendency to mumble, I apologize in advance, please chastise me to speak up if necessary. You just take your time, but if you could, you've got that mic right there, so just speak into that mic and we'll hear you just fine. Thank you. Thank you. The appellant believes that the verdict in this case issued by the, and the court has been reversed for two reasons. Foremost, as set forth in our briefs, is the fact that the deposition of Fritz Charles should never have been admitted to the case. Can we talk about that first? Please. I am completely, completely confused about what happened procedurally in this case. Forget the law for a second. So, the record as I see it is hopelessly muddled on exactly what the parameters of the agreement between the parties were, right? And I think there was a change of counsel at some point. Yes, Your Honor. So there was some agreement between the parties with regards to Mr. Charles. Yes, Your Honor. Okay. So, first let me ask you what your view of that agreement was and where I can find it in the record second. So, what was the agreement about Mr. Charles as a witness? So, Your Honor, the case originally came up for trial in 2020, right at the, on the verge of the COVID. Right in the beginning, March 6th. Couldn't time it any closer. And the entire agreement is set forth in Docket Entry 272-1. It's an exhibit to the defendants' opposition to our motion for new trial. This was filed by the defendants. And Judge King, who was presiding at the time, asked if there was any issues with the witnesses. And plaintiff's counsel at the time, Jessica Quiggle, who left shortly after the case was continued for trial, said, she was asked by the court whether he would be called or not and the Ms. Quiggle said, he's not on the defendants' list, but we do have an issue with a fact witness who may or may not appear at trial. He said at his deposition he didn't want to come. The court, I don't care what people say at deposition. Have you got a motion? Whose witness list is it on? Ms. Quiggle, plaintiff's counsel. He's on plaintiff's witness list. Ms. Acuna, defense counsel. He's on both parties' witness list, Your Honor. All right, what is the man's name? Ms. Quiggle, Fritz Charles. The court, okay, whatever his name is. Ms. Quiggle, I have subpoenaed him. Plaintiff always wanted this witness to appear live. You are asking me whether I should try to find him or bring him in. What do you want me to do? Ms. Quiggle, we have stipulated to deposition designations because he was deposed in this case. And this is crucial. This is the agreement. Ms. Acuna, counsel for Carnival. If he does not appear, Your Honor, what we have proposed, Your Honor, is that if the witness, despite good service, does not appear, that the parties would stipulate using his designated testimony, and we have in fact already filed those with the court in an abundance of caution. That was the agreement. There was no further discussion, and it was Carnival that insisted. Right, but then right after that, Carnival filed a second amended witness list, right, where they then designated Charles as a witness who would testify via deposition. A video deposition. Correct. And then they also, I believe, and they filed that amended witness list. And then I understand that at that point in time, the trial got rescheduled, not because of pandemic. It got moved to April, not knowing the pandemic was going to happen. And then the pandemic happened. But at that moment in time, there was an amended witness list that indicated that Charles was going to be via video deposition, and there was no objection from your client. There was no obligation, I would submit, Your Honor, to make an objection. That amended witness list was filed two days before trial. The trial that was then set had not been continued yet. It was a complete nullity. It was completely unauthorized by the rules. Carnival did not seek leave of court for permission to file the untimely witness list or to identify the witness or to renege on its own agreement. This is the understood to have going into trial in 2022. And it was the agreement that Carnival has. But then what happens when Judge Gales becomes a district court judge and who's responsible for the trial? Yes, Your Honor. And he goes through a long period of time with both counsel going through the designations for this deposition of Charles at the trial, at the at the trial that actually ends up happening in February of 22. Your Honor, at that moment in time, you have made no objection. And and you're going through the designations of this testimony by Mr. Charles. At that point in time, again, and this goes to who's obligated to do what under the rules. Carnival was obligated if they wanted to introduce this deposition in light of the party's stipulated agreement to come forward with evidence that they had tried to subpoena the witness. But at that moment in time, there already had been an amended witness list, another witness list. And the witness list indicated that Charles would be by a video deposition. A video deposition. And then your client, I'm not talking about the Rule 32 objection, but there also is, I think it's Rule 26. And there you have to also make a timely objection. Do you not? A timely objection to a timely disclosed witness, Your Honor. It's Ms. McBride's position that that witness list filed two days before the trial was a nullity. Is it your position that you could just have the district court judge spend an hour, two hours, the entire day doing video designations of this deposition and of Mr. Charles, and then when it was going to be presented to the jury, then object? Yes, Your Honor. As a matter of fact, under the rule, under Rule 32, the time to object is at trial or hearing. But here's the, I think, the point that Judge Lagoa might be getting at. Yes, Your Honor. The lawyer for Ms. McBride says this to Judge Gales on the night that you do the depo designations. Your Honor, there are a couple of preliminary things. I don't know if you want to deal with them. They are depositions of Fritz Charles, and there are three exhibits they listed that were objected to that we'd like to have heard at some point. Now, if I were the district judge, I would not have understood that to mean that there is an objection to the video deposition testimony of Mr. Charles, just that there are objections to the designations, and that's he spends a fair amount of time, Judge Gales does, trying to figure out which objections are sustained and which ones are overruled. Wasn't it Ms. McBride's obligation through counsel to just tell Judge Gales at that point in time, Judge, before you get to these deposition designation issues, we don't think you should testify by deposition at all? Respectfully, Your Honor, and I appreciate Judge Gales' frustration in what he perceives as having wasted time, but that was the party's agreement. They did designate . . . But he doesn't know that. He doesn't know that because he wasn't a trial judge before. He was not present at the calendar call where this agreement was mentioned in two sentences by, you say, Carnival's lawyer. He doesn't know the parameters of the agreement. He has a witness list which says he's testifying by videotaped deposition, and he doesn't have any objections in writing from you about the videotaped deposition, right? Your Honor, I think . . . I agree with you. However, you have to look at it from the reverse image as well. There was also nothing saying that we do agree. That you do what? That we do agree that the . . . But that's not the way it goes. The rules of procedure exist for their use by the parties, but parties can forego the protections given to them by the rules. People testify about hearsay all the time at trial, and if one side thinks that the hearsay doesn't hurt them and maybe even helps them, they're not going to jump up and object every single time that there's a hearsay bit of self-enforcing. It requires people to assert them, and if I had been in Judge Gail's shoes, I think I wouldn't have perceived that there was any objection to Mr. Charles testifying by video deposition. And this is, I think, where we disagree with Judge Gail's as well, is under the rule . . . But you're only looking at Rule 32. The problem is that the rules are like a puzzle, and Rule 26A3B, which is for an objection to a Rule 32 deposition designation by another party, that objection has to be made, and it has to be made in writing. And that wasn't done here. So again, if you had done that, then Judge Gail's would have known, okay, I have these pending motions, whether it's a motion to eliminate, but here I'd have a motion under Rule 26A3B, an objection, and then he could have said, are you still objecting? But if you don't . . . And there's a reason why it has to be in writing. It has to be in writing because then the trial court is aware of the objection. And put that even aside, that you're not required to put it in writing. If you didn't put it in writing, I think you had some sort of obligation to tell Judge Gail's, listen, we have this understanding. Here's what the understanding consists of. Here's why under that understanding, Mr. Charles cannot testify by video deposition. And that was not done until the next day. I guess I can understand why Judge Gail said, too late. I can understand that as a human being, and given what judges go through in trial, the same way the lawyers go through in trial, but the obligation wasn't there. The obligation under the Rule was to object at the time that the deposition was going to be introduced. Right. But the question is whether you waive that. There's no question that the time to object as a general matter is when the deposition is being offered because you cannot know before that time about the unavailability and whether he will or will not show up at the time when he otherwise was required by subpoena to be produced. Yes, Your Honor. The question is did you waive that by all of the conduct in the case, leaving the court to believe that in substance there was an agreement and you were not objecting to the admissibility of the deposition by video? I would back up just a second, Your Honor. First of all, I would submit respectfully that we did not waive it. We adhered to our that second amended witness list was a nullity. It wasn't authorized. All the deadlines that were set for the original trial stayed in place after the continuances. That witness list was untimely and we were never obligated to object to it in writing. And second, Judge Gales went solely on the fact that the objection wasn't raised during the charge. How did you not even waive it just based on your conduct, which is that you went through the designations of a deposition with the district court judge with the understanding that these were the designations that were going to be played to the jury? How is that not a waiver by conduct? The time to object was the next day when the deposition was offered. Let's give you a little bit of time. If you can address the second issue and spend a couple of minutes on it. Stephanie, can you please give him two minutes? The second issue is a request for a new trial based on the verdict itself. Yes, Your Honor. And the size of the verdict. So why don't you go ahead and talk to us about that? Well, Your Honor, I think that the case law is clear where there's clear liability or concession of liability, as in this case, and there's economic damages awarded in the personal injury case, then there has to be non-economic damages awarded as well. On appeal, Carnival argues repeatedly that there was no evidence to support the pain and suffering award and that the argument of counsel was convincing. Well, the entire argument of counsel was that you don't have to give any money if you don't want to. That's the law. There was no argument by counsel that there was no evidence of pain and suffering. The evidence was undisputed. And this ties in, actually, with the import of the Fritz Charles deposition. I switch back and forth constantly. The only possible way the jury could have felt that she didn't suffer any pain and suffering is if it gave credence to Mr. Charles' spectacular theory that she somehow raised a 310-pound woman down light as a feather. All the other evidence was uncontradicted that she was in great pain and suffering at the time of the incident. As a matter of law, I respectfully submit that the verdict itself is evidence that the jury didn't consider all the undisputed evidence. Wasn't there evidence that she was released almost immediately and that there was no diagnosis of trauma? No. She was released immediately, but there was diagnosis of soft tissue injury, bruising and swelling. They claim in their brief that there was no diagnosis of trauma. Everyone was there to witness it. She fell out of the wheelchair. Trauma by definition. She also testified that she suffered pain when she fell. Yes, Your Honor. She said she fell. So why don't you, it would be helpful to me, the standard is where the evidence is undisputed or substantially undisputed that a plaintiff has experienced and will experience pain and suffering as a result of an accident. A zero award for pain and suffering is inadequate as a matter of law. That seems to be a clear and unambiguous statement of Florida's law. Accepting that, why don't you tell me one, two, three, four, what evidence was adduced in the record that undisputedly or substantially undisputedly established pain and suffering in this case? I would just refer to the evidence, the uncontradicted evidence of Mrs. McBride's testimony and the testimony of her spouse and I'm trying to find it now to quote it. So the plaintiff testifies that she sustained pain. That's one. Yes, Your Honor. Her husband testifies my wife was in pain. Yes, Your Honor. That's two. Yes, Your Honor. What else is there? The medical records that show that she was complaining of knee, hip, and shoulder pain. Right, so you have the ambulance report. Yes, Your Honor. Right, and the emergency room report that the plaintiff complained about pain. Yes, Your Honor. That would be three. Yes, Your Honor. And that she had soft tissue injuries. That was the ultimate diagnosis at the hospital. We dispute that that was an accurate diagnosis. And four, she was given a painkiller at the hospital. Yes, Your Honor. Do we know what that painkiller was? Does the evidence reflect that? I can't comment on that. I'm not overly familiar with the medical records. I apologize, Your Honor. If the court would like, I can file a supplement. That's all right. I was just curious if you knew from the record what pain relief medicine the hospital prescribed after she was discharged. I apologize. Off the top of my head, I can't answer that question. Let me ask you four. Did the Carnival Cruise expert testify that the plaintiff had, quote, soft tissue injury and that it would, quote, take three months to heal? Yes. Okay. So that would be your fifth citation of evidence. And then six, the defense counsel at closing argument conceded, quote, that the injury caused some pain. Yes, Your Honor. Okay. So that would be the corpus of the evidence, which you say is substantially undisputed, establishing that she had pain. And it was completely undisputed. Nobody testified that when she fell, she wasn't in pain. Thank you. Okay, Mr. Bailey, we'll give you your full time for rebuttal. Thank you, Your Honor. Mr. Dono. Good morning. May it please the court. Michael Dono on behalf of Carnival Corp. I'll start off with the first issue. Hopefully, I could provide some clarity on the stipulation. It was Carnival's trial counsel's understanding at all point that there was a stipulation that was entered into between the parties that the deposition testimony would be admitted into evidence and that Prince Charles would not be appearing. Oh, I'm sort of confused about that. Sure. I understand the things that happen after the dialogue with Judge King on March the 6th, 2020, after the pandemic. But I want to bring you back to the calendar call before Judge King, March 6th, 2020. And the dialogue at least includes some of this. McBride's counsel, we have stipulated to deposed in this case. Carnival's counsel, if he does not appear, Your Honor, what we have proposed, Your Honor, is that if the witness, despite good service, does not appear, that the parties would stipulate using his designated testimony. And we have, in fact, already filed those with the court in an abundance of caution. What were you saying then? Was the agreement at least at that point before Judge King? Understood. The language of what transpired briefly at that before Judge King is not clear. I'll concede that. I think what you have to do is take a look at what happened two years after that. But let's stop. Sheds clarity. I may be the only one who thinks that's clear. I think what happens later is unclear. But it struck me that Carnival's counsel statement, was pretty clear. What Carnival's counsel seems to be saying is, if two conditioned precedents occur, then the testimony is going to come in. If the witness, despite good service, does not appear, so A, he has to be served with a subpoena, and B, he doesn't show up on the date he was required to appear, then the parties would stipulate that the deposition would come in. Is that not what counsel was saying? That is what, reading that in a vacuum, I agree. Those words, there's nothing ambiguous about that, is there? No, there's nothing. And McBride had actually served Charles at that moment in time. I believe so. There was service on him. So that's what's suggested by when Ms. Quiggle says, we've laid a subpoena on him. So if that's all the record reflected, until the witness was not there and the deposition was offered, wouldn't the time to object be at the time the deposition was offered in court, at trial, as evidence in front of the jury? Isn't that when the party should get up and say, I object, Your Honor. These conditions have not been shown or met. We haven't established, A, that he was subpoenaed. We certainly have established that he's not here. No, I think, unfortunately, what's not part of the record is whatever was discussed with trial counsel for Carnival and Ms. Quiggle. If that were somehow part of the record, there would be more clarity as to what happened here. The only evidence that we have as to what happened after this pretrial conference is the fact that the very next day, a second amended witness list, which added no witnesses, deleted no witnesses, the only thing it said was, it designated for the first time that Rich Charles would be testifying by video. Was that a joint exhibit list or was that your exhibit list? That was Carnival's exhibit list, which I argue was a memorialization of the stipulation between the parties. How did it memorialize the stipulation between the parties? It said, we intend to call by Deposition Jones or McBride. Right. Anything more than that? For example, if Carnival was saying the day before, we want rule 32 satisfied, and then turns around the very next day and says, we no longer want that. We agree. We're just going to go ahead and submit him by deposition. It shows that there was something that transpired between the time of that hearing and the time that that second amended witness list, just 24 hours later, that changed. Can I ask you a question? You used the word, there was a stipulation. Where will I find that stipulation in the record? Well, it would be what was said before Judge King. What's the critical language that they stipulated that he would unconditionally be received as a witness by deposition? Ms. Quigle says, and this is the docket entry is 272-1. And she says, we have stipulated to deposition designations because he was deposed in this case. I'm sorry, go ahead. I'm sorry, finish. And then, again, you see the conduct that transpires after that. And it's clear, at least in Carnival's mind, that there was an agreement. Well, this is where I guess the issue for me is, if the trial had gone forward and the pandemic had happened and April had come into play, that's a different case. But the issue I'm having is with what happened in front of Judge Gales. I understand there's, I'm going to call it stipulation A, right? But then when the trial is actually happening and you're in the middle of trial, at some point, Judge Gales says, is there anything you want to leave overnight before we retire for the evening? Do you want to go through the designations? Ms. Acuna, please, Your Honor, I appreciate it. Do you have those ready, Mr. Valera? Your Honor, I think there's only one pending objection, and then the rest is a blanket objection. Your ruling should take care of all my objections. The court, we're talking about the designation for Mr. Valera, Fritz Charles, yes. So at that moment in time, there's an indication that there could be objections, but there's no objection at that moment to the fact that Fritz Charles's deposition is coming in as a designation because he's not going to come in live. Correct. And in fact— I'm almost like at this point, whatever happened over here in stipulation A is irrelevant because now we're dealing with the actual trial and what's before the district court, Judge. Exactly. And Your Honor, you previously mentioned that under Rule 26A3B, no objection was ever filed. And in fact, this was not in the briefs, but in preparing for our argument, Document 246 filed during trial. Plaintiff McBride filed a notice of filing objections to defendant's deposition designations with the court. All she did was, number one, plaintiff objects to the following deposition designations of Fritz Charles for the deposition taken April 18, 2019 on grounds of hearsay. No objection about the fact we had designated them as a videotaped, as him appearing via videotaped deposition. Nothing. This was all that was filed. No objection. And then they proceeded, as Judge Scales noted in this evidence from the transcript, to argue the objections. What makes this case even stranger, in my perspective, is that at the initial calendar call before Judge King, it looked like it was Ms. McBride who wanted to have the opportunity to call Mr. Charles by deposition because Ms. McBride's lawyers feared that he wouldn't show up. Correct. And it was Carnival who said, well, you know, we'll let you do that if after service he doesn't show up. And then by the time you get to trial, everybody's flipped. And so Carnival now wants his testimony by video because he's not there. And Ms. McBride, although maybe late, is objecting. By the way, there was no evidence. There's no evidence. There's no statement of anything of him being served by either side with a subpoena for trial, right? Right. In the record. That's not on the record. Okay. The record. Let's talk about the second issue. Can we just stop just one moment, if I could, Judge? Of course. I want to ask one more question of you on this question of the objection. In the normal course of events, let's hold aside the muddled record that we have in the dialogue on March the 6th, 2020. And let's hold aside what may well be a waiver by virtue of his conduct in going forward and spending an hour with the district judge knocking this out and keeping this in. You'd hardly go through that if you were going to ab initio object to its admissibility. Hold that aside. In the normal course of events, in your view, if there will be an objection to somebody's offer of deposition testimony in lieu of live testimony, when, in your view, does that objection have to be made? Absent a designation under Rule 26 that the opponent will be appearing via deposition, it would be made at the time the witness is called at trial. Okay. So, normally, if you were going to object, you'd object then because, as a logical matter, you don't know for sure whether someone will or will not appear. Many people are subpoenaed. Occasionally, they just don't show up. And you can't cry unavailability until the moment has come where we're offering the deposition, right? Yes. Okay. So what happens here is different. Because you say there was either an agreement explicitly or by stipulation, or the conduct was such that he effectively waived it by not interposing an objection at least the night earlier when they fooled around with this issue for an hour. That's your position? Yes. Okay. Why don't you get, I'm sorry, you can go right to the issue of the painting side. Thank you. The second issue here is the issue of pain and suffering. And I think we have to begin the analysis by stressing that just because there's an award of hospital bill damages, that there's a per se entitlement to pain and suffering. There is no per se entitlement. Especially when the evidence here, where there was evidence presented, disputing pain and suffering. The evidence on pain and suffering is undisputed. I mean, she testified about it. Judge Marcus went through the litany of the evidence, but she testified about it. Her husband testified about it. You've got the ambulance report. You've got the soft tissue injury designation from the hospital. You've got Carnival's experts saying it would take, that that would play itself out within one to three months. I'm not talking about a big pain and suffering award, because I can see the jury finding, based on the admission, negligence by Carnival. And then a small mishap leading to some hospital expenses and nothing else. In other words, that whatever happened later wasn't causally related to what happened with the wheelchair incident. I can see the jury coming to that conclusion logically and not awarding any pain and suffering for anything happening beyond that. But in terms of like the immediacy, the fall, the pain of the fall, going to the hospital, being treated, I find it hard. I don't know whether it's reversible error, but I find it hard to see how a jury, having found, based on the stipulation of liability on negligence and an award of medical expenses for the incident itself, to not award anything, anything, anything on pain and suffering. But the trial court who observed the evidence refused to disturb the verdict here. And I think when you look at... No, but that was a one-liner. ...body of evidence. It was a one-liner. It's consistent with the evidence. That tells me zero. Well, you have Dr. Sinrich who described what happened to her, falling out of the wheelchair as not much worse than like sneezing, a hard sneeze or a hard cough. That's how he described what happened here. You have that evidence there. The jury could have seized on and said, you know what? Given her credibility here, the credibility was one of the central themes in this trial. And they could have very well believed that she did not suffer any pain and suffering, that she was exaggerating what happened that day. Well, but you see, the problem that you have with that theory, it seems to me, just talking for myself is this. As I read Florida law, and I want you to correct me if I do not have it right, where the evidence is undisputed or substantially undisputed that a plaintiff has experienced and will experience pain and suffering as a result of an accident, a zero award for pain and suffering is inadequate as a matter of law. Rozier, the DCA says it, courting Ellender v. Bricker where the different district courts said the same thing. And there appear to be many Florida cases saying that. Is that a fair statement of the law? Normally, you wouldn't fuss with a jury verdict when it's making a decision on pain and suffering in the absence of an objective standard by which to measure it. But where the evidence is undisputed, that some pain and suffering was actually sustained, isn't it reversible error in Florida not to award some pain and suffering damage, even a nominal amount? That's my understanding. However, I think from the record, it was disputed. And that's why it should not be. Let's go through it again. The plaintiff said she was in significant pain. No dispute about that. The ambulance report reflects that the plaintiff complained about pain in the ambulance. At the hospital, the plaintiff was given an x-ray. And discharged only having been given pain medication. No dispute of all of that, right? There's no dispute that that's what happened. I'm accurately reflecting, at least in so far as I've gone, what's in the record. Correct? Correct. Okay. And then fourth, the carnival expert testifies, your expert, the plaintiff sustained soft tissue injury and it would take three months to heal. That was his testimony, right? That was right. But again, there's other testimony that would undercut- That said she sustained no. What piece of evidence is there in the record that would suggest she sustained no pain and suffering? As opposed to evidence that disputed the nature and extent of the pain and suffering she sustained. I think I have to seize upon, again, what Dr. Sinrich testified at trial, which was in docket entry 280, 156, or 152 lines four through six, where he said it's a low energy type of injury, not much worse than like sneezing, hard sneeze, or a hard cough. So yes, she could be claiming she suffered pain. She could be, you know, that can be exaggerated. The jury could have said, you know what? Given the mechanics of the fall, using our common sense, they were instructed to use our common sense as to what happened here. They could have reached a determination that no, we're just going to award her the $10,400 or I forget the exact, $10,543 for immediate medical attention following the accident. But we don't think that she really suffered any legitimate injury here, which warranted an award of pain and suffering. Maybe the evidence that we heard at trial- Is there any evidence, is there any evidence in addition to lines four to six on page 152 of Sinrich's testimony that suggested or said that she sustained no pain? The other, the other, the other evidence that I would point to the court would be the issue of pre-existing injuries. And the fact that that there was evidence as to that, and the jury very well could have been persuaded that the pain that she was suffering was a pre-existing injury and not anything that transpired as a result of her fall from the wheelchair. Possible, but that's not what your, what counsel for the defendant argued, is it? Didn't counsel for the defendant in closing statement actually say that the injury caused soreness and some pain? I thought you conceded that point in closing argument and the debate was simply, yeah, she had some pain, but it wasn't a big deal, as opposed to she didn't sustain any. Maybe I've misunderstood that. How I read the transcript, Your Honor, was that we never conceded it was pain and suffering. And in fact, we, what we told the jury was, you can award it if you feel that she's entitled to it, but- This is, this is what you guys actually said. It's up to you to determine if there's pain and suffering component of the soft tissue injury. And unlike medical bills, there's no piece of paper to tell you all that is reasonable amount might be, you can decide zero. There's nothing in the law that says that you cannot. I mean, you didn't concede that there was an injury. You just told the jury it's up to you to decide. Right. That's exactly what- I want to read you the whole comment. Carnival's attorney in closing, among other things, yes, this wheelchair incident will cause soft tissue injury. That is what occurred. And then, it's causing soreness and causing her some symptom is pain. That's completely understandable, of course. I may have misapprehended this, but I really did think you were conceding there was some pain associated with it. It just wasn't a whole hell of a lot. Maybe I misunderstood that. I think if you contrast that with what Judge Lagoa read in closing, I think, yes, we were never agreeing that pain and suffering should be awarded. Let me ask you the question this way. If indeed it's true that the evidence is substantially undisputed, which is the test that I read at least in one or more of the DCA cases, if that is true, what's the right remedy for this court? Do we remand it and say to the trial court and the parties, basically, you've got two choices? Choice A is she gets a new trial only on the issue of damages with respect to pain and suffering and nothing more. Or the alternative is you can consider editor with the agreement of the parties and ignore the time and money of a new trial. So those would be the right remedies for us to suggest to a trial court if indeed there was substantially undisputed testimony about pain and suffering, right? Now, honestly, I have not researched what the remedy would be given, you know, if there was, in fact, an error here. But that does seem like two reasonable outcomes if, in fact, the court were to reverse. On that limited issue. I couldn't, you know, I would need to discuss that with my client, obviously. One last question. I know that in an admiralty maritime case against a cruise line, you can sometimes borrow state law to fill in gaps. Was this case tried as an admiralty slash maritime tort or was this tried as a state negligence case under state negligence principles or a hybrid combination of the two? My understanding, there were elements of maritime law. For example, part of the reason that we, in this case, accepted liability was because under maritime law, Carnival has an undeligible duty of providing safe ingress and egress off the cruise ship. So there were elements here in play as to maritime law. The reason I ask you the question is that there is potentially the possibility that under maritime law, the standards set out by Judge Marcus gleaned from the Florida District Court of Appeal decisions is not the federal standard. But in your response brief, you don't take issue with the reliance on Florida law. And as a matter of fact, for the same issue and on different issues, you rely on some Florida law, too. So I take it you don't have any dispute with that standard being used in this case, however it comes out. Well, if in fact, the maritime law standard is a lot, is different, it potentially could apply. Right. But my point is, your brief doesn't say, hey, he's relying on this line of Florida District Court of Appeal cases, that's state negligence law, and state procedural law. That is not federal maritime or admiralty law. Here's a very different and much more difficult federal maritime standard. You don't make that argument in your brief. One of the issues, Judge, also that we've kind of skipped over is the fact that the carnival's position was that the pain and suffering issue was waived because it was never an objective. We haven't discussed it, but it's in your brief and you haven't given it up. But that's not the issue. That's not the question I'm asking you about. Okay, thank you. Let me just ask one more time. Would it be fair to say here that the case was tried and argued in the District Court, as well as argued in the Court of Appeals, as being governed by Florida's state law of tort? That would be an accurate description of what actually happened, wouldn't it? Unfortunately, I cannot answer that question because I did not, I do not recall the exact jury instructions that were used. Can I, and this is actually an important point that Judge Jordan made, because in your Ninth Affirmative Defense, carnival says, defendant alleges that this action is controlled by federal maritime law to the exclusion of state law. And I don't have the jury instructions in front of me, so I don't know. Unfortunately, I can't shed light on that because I don't know. But putting aside whatever happened in the District Court, and however that the case was tried there on appeal, it seems to me you're not advocating for a different rule. I think if you look at the brief, it's just, in all honesty, Your Honor, carnival's brief doesn't argue that Florida law applies. We're just arguing here that there's no basis for the court under practically any standard, given what the evidence was at trial, that warrants a new trial because the jury awarded zero on pain and suffering. Okay. Thank you very much. Thank you. Mr. Bailey, you've got five minutes. Mr. Bailey, at the outset, can I ask you how this case was handled in the District Court? Was this tried as a maritime case or as a case arising under Florida law, or was that issue never addressed? To my knowledge, that issue was never addressed. Carnival certainly never moved for summary judgment or raised any arguments under its affirmative defense that maritime law applied. The parties routinely and regularly argued federal law or federal precedent without regard to whether that was a maritime precedent. They also argued Florida law as we have done on appeal. I think there was a silent assumption that Florida law... Florida law, state law, can fill in gaps for federal maritime law where there's no conflict with admiralty principles. I'm not saying it was wrong to do that here. My point is that I think Carnival has not argued for a different federal rule on appeal. Correct, Your Honor. One you're advocating for. I agree, Your Honor. One of the arguments they do make in their brief is that Ms. McBride did not mount a challenge on a timely basis below. You respond in part that they waived that waiver argument by not asserting it below. So, let's have your argument on that. Where do we stand with regards to your potential waiver? And their potential waiver of your waiver? Yes, Your Honor. Just that, that assuming there was a waiver in the trial court, that argument has been waived. It's not jurisdictional. It didn't form a basis for the trial court's decision. Trial court ruled on the basis of the evidence. And so, since it wasn't raised below, it can't be raised on appeal. And that's the same rule in Florida State Court, I might add, as Judge Lagoa would know. So, it's not a jurisdictional defect. And it's the rule requiring that the issue be raised before the jury departs is one of judicial economy. Under the circumstances of the case, unfortunately, it would require a new trial. And to answer your question, Judge Marcus, I don't know that a federal court has We briefed this in our memo. I think it's either a new trial or nothing. Well, if you were proceeding under Florida law, and this was simply a case grounded in diversity jurisdiction, then I would be hard-pressed to know why a federal court sitting in diversity would not apply all of Florida law, including it on additive. Maybe I've misunderstood that. So, my understanding in briefing this was that it's a jurisdictional issue, that federal courts do not have subject matter jurisdiction to award additive. Even if the case is governed by the law of the state of Florida because it's diversity? Is there a case that says that? And could you point me in the right direction? I'm not aware of a case that says that. When I reviewed it, I reviewed it as a procedural issue that would apply in federal courts, regardless of the substantive law aspect of it. And so, unfortunately... Let's assume that you're correct. Yes, Your Honor. That additive is not an option if we agree with you on the inadequacy of the verdict on pain and suffering. Yes, Your Honor. Given the way the jury resolved the issue, what do you get? A new trial on pain and suffering? I think we get a new trial on all of it, Your Honor, because... But you get to retry the case completely? Yes, Your Honor. Even though the jury, for the first time around, found apparently no causation with regards to her later injuries and later medical procedures? Because the jury was improperly influenced, Your Honor. Influenced by what? Primarily... We're not talking about the Fritz trial, deposition issue. Assuming you lose on that issue, but you win on the inconsistent jury verdict issue, what do you get? A nominal amount of money, but I... You're saying we can't add it? It would be for a new trial. Yes, but why would the new trial go to anything other than the limited question of pain and suffering damages? Because I think that... That would be the only... If Florida law governs, that would be, by your lights, the only error we have. I'm not conceding the French Charles deposition. Let's hold that aside for a moment. And before I forget, because I'm running out of time, I do want to point out that we did file an objection. Try and answer my question, if you would, please. Sure. It's my belief that we get a new trial on everything. Why? Because the content of the verdict, in which the jury clearly ignored undisputed or substantially undisputed evidence, shows that the jury was compromised. So your position is that if we agreed with you, even just on the second issue, you're entitled to a full trial period? Yes, Your Honor. And if you could indulge me for 10 seconds, I appreciate counsel's candor in bringing to the court's attention that there was a written hearsay objection lodged against the deposition before it was admitted. All right. Thank you both very much.